BATE REFRIGERATING Co. *v.* TOFFEY and others.

*(Circuit Court, D. New Jersey.   January 19, 1881.)*

1. RE-ISSUE No. 7,643—IMPROVEMENTS IN AIR COOLING AND DISTRIBUTING APPARATUS—NOVELTY.

Re-issued letters patent No. 7,643, for "improvements in air cooling and distributing apparatus," claimed, *inter alia:* "In an air cooler, or apparatus for cooling carcasses, etc., the combination of a fan-blower, or its equivalent, an ice-chest, or equivalent, and one or more pipes or conduits, which equally distribute the air within the place or apartment to be cooled, substantially as and for the purpose set forth." *Held,* from a consideration of the state of the art at the time of the invention, and from the specifications and claims of the patent itself, that its precise design was to cool apartments; that the same was fairly applicable to enclosures constructed for the transportation of meat, and that a new and useful result was thereby reached. —[ED.

In Equity.

*Dickerson & Dickerson,* for complainant.

*George Gifford,* for defendants.

NIXON, D. J.   The complainant corporation files its bill of complaint against the defendants for infringing certain reissued letters patent No. 7,643, dated April 24, 1877, for "improvements in air-cooling and distributing apparatus." The original letters patent, numbered 44,731, and dated October, 1864, were granted to one Moses J. Kelley, for an "improved atmosphere cooler."   One of the defences set up in the answer was that the re-issue was not for the same invention.   It was not urged at the hearing, and, on comparison of the two letters patent, I find no valid grounds for such a defence.

The subject-matter of the controversy has reference to one of the most valuable inventions of modern times; to-wit, the method of transmitting slaughtered animals for long distances over oceans and continents, and preserving, at the same time, the sweetness and purity of the meat as an article of human food.   Whilst a beneficent Providence has furnished to the world an abundant supply of everything needful for the material wants of all His creatures, He has left it

to the ingenuity of man to devise the means of supplying the destitutions of one region with the surplus of another. All contrivances which have for their object such a result are worthy of the most careful consideration. It is contended, on the part of the complainant, that the defendants have infringed the first, second, third, and fifth claims of the Kelley re-issue. These claims are as follows: "(1) In an air-cooler, or apparatus for cooling carcasses, etc., the combination of a fan-blower, or its equivalent, an ice-chest, or equivalent, and one or more pipes or conduits, which equally distribute the air within the place or apartment to be cooled, substantially as and for the purpose herein set forth; (2) in an air-cooler, or apparatus for cooling carcasses, etc., the combination with the ice-chest of one or more perforated distributing or equalizing tubes or conduits, substantially as and for the purpose herein set forth; (3) in an air-cooler, or apparatus for cooling carcasses by a forced current of air, etc., the ice-chest having an oblong opening at or near its bottom, and extending nearly or quite across the width of the ice-chest, substantially as represented in figure 1, for the purpose specified; (5) in an air-cooler, or apparatus for cooling carcasses, etc., the combination of the fan-blower, or fanners, F, the system of tubes T, $t'$, $t'$, etc., and the ice-chest or depository, in either of said forms, as and for the purpose shown and represented."

The main defences on which the defendants seem to rely, are (1) that Kelley was not the original and first inventor of the alleged improvements; (2) that the refrigerator which they use is not an infringement of the re-issued letters patent of the complainant.

1. The question of novelty is determined by ascertaining the proper construction of the patent alleged to be infringed. If it be construed broadly as a combination of an ice-chest, a fan-blower, and one or more pipes or conduits, without reference to the performance of any specific functions, then the patent has been anticipated by other refrigerators,—notably, by the Lyman 1853 apparatus. But if, as the claims and specifications seem to admit, it be limited to a combina-

tion of these instrumentalities, whereby an equable distribution of the air shall be produced within a place or apartment to be cooled, a new and useful result has been reached, which distinguishes the apparatus of the complainant from any organization previously existing.

But the counsel for the defendants insists that no authority is found in the patent to place the combination within an enclosure; that the same is necessary to make the apparatus operative; and that doing so was an afterthought by the complainant, although not contemplated or provided for by the original inventor.

It appears evident, however, from a consideration of the state of the art at the time of the invention, and from the specifications and claims of the patent itself, that its precise design was to cool apartments, and that it is fairly applicable to enclosures constructed for the transportation of meats.

The first and principal claim is for a specified combination of elements "which equably distribute the air within the place or *apartment* to be cooled." It is possible that the patentee thought it was capable of being used outside of an enclosure; but, whether this be so or not, there is enough revealed in the specifications and claims to suggest to any one skilled in the art to organize the mechanisms within an apartment or closed room, where, doubtless, the best results are attainable. The phrase, "*which equably distribute the air within the place or apartment to be cooled,*" are the emphatic words of this claim. They give individuality and life to the patent. They not only suggest an enclosure in which the combination is to be placed, but they indicate a beneficent result to grow out of the apparatus as arranged by the patentee, which gives character to it, and which distinguishes it from all others.

The remaining claims are modifications of the first. The second is limited to one or more pipes, each provided with several perforations, and arranged, as in the first claim, so as to obtain an equable distribution of the cooled air throughout the apartment. The third is for the form of the ice-chest, as described, to-wit, with an oblong opening extending nearly or

quite across its bottom, by means of which the air entering the ice-box is equably distributed. There is a special limitation of the fifth claim to the system or aggregation of tubes as shown in the drawings; that is to say, one main tube, T, and the several smaller ones, *t t*, etc., extending over the ceiling of the chill room.

Thus interpreting the several claims of the complainant's patent, alleged to be infringed, the only remaining inquiry is whether the defendant's apparatus infringes them. With the above construction of their meaning it seems unnecessary to dwell long upon the question. Not much attention was given to it in the evidence or on the argument, the whole controversy there appearing to turn upon the question of novelty. It was not seriously controverted that the refrigerators used by the defendants secured an equable distribution of the air throughout the place or apartment to be cooled, by substantially the means indicated in the complainant's patent.

There must be a decree for the complainant corporation, against the defendants, for infringing the first, second, third, and fifth claims of the patent sued on.